IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

QUESTAR SOUTHERN TRAILS PIPELINE
COMPANY, a Utah corporation,

                Plaintiff,

v.                                        NO Civ. 02-10 BB/LFG ACE

4.26 ACRES OF LAND, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Williams Field Services' ("WFS's") Motion for Protective Order and to Quash Subpoena Duces Tecum ("motion to quash") [doc. 83], filed October 4, 2002. After careful consideration of the briefs and argument of counsel,[1] attachments to the pleadings, and the pertinent law, the Court concludes that WFS's motion to quash should be granted in part and denied in part. The Subpoena shall be modified as set forth below.

## Background

This is a condemnation action. Plaintiff Questar Southern Trails Pipeline Company ("Questar") seeks to acquire a 50-foot right of way easement through property owned by Defendants Aubrey and Patricia Woods ("Woods") in Bloomfield, New Mexico. The easement is for purposes of the construction, operation, and maintenance of a natural gas pipeline. The Woods stipulated to

---

[1] Questar also filed a brief in support of WFS's position.

1

Questar's right and power to condemn their property for these purposes. Questar negotiated with the Woods in the attempt to purchase the right of way easement but was unable to reach an agreement. The parties do not agree on the amount of the difference in the before and after fair market value of the Woods' Bloomfield property, nor do the parties even agree on the valuation method that should be employed. The Woods urge the adoption of a "pipeline corridor" approach. *See, e.g.,* United States v. 8.41 Acres of Land, 680 F.2d 388 (5th Cir. 1982). WFS prefers the traditional "before and after" approach. The Woods more specifically argue that "[t]he parties differ on what is the highest and best use of the subject land, the recognition of and location of pipeline 'corridors', the market prices established for pipeline corridor land, whether recognized industry practice of valuing rights of ways in lineal measures (feet or rods) or Questar's acreage values measure is correct, unrestored damages to the surface and . . . the just compensation to which the landowners are entitled."

    WFS is not a party to this proceeding. However, WFS, like Questar, acquired right-of-way easements to construct their own pipelines through negotiations with private landowners in the Bloomfield area, including San Juan County, New Mexico and La Plata County, Colorado. Both WFS and Questar have the authority to acquire property for a public use using their powers of eminent domain.

    On September 11, 2002, the Woods filed a third-party Rule 45 subpoena on WFS, requesting a number of documents related to easement purchases that WFS negotiated with other private land owners, "most in the very vicinity of the Wood property." The Woods specifically request all documents in WFS's possession or control relating to the "purchase, negotiation, or acquisition of right of way easements for construction and maintenance of gas transmission lines, gas gathering

lines, CO2 blend lines, or liquid transmission lines, from private landowners in San Juan County, New Mexico or La Plata County, Colorado, from January 1, 1990 to present." They request payment records, field notes, correspondence contracts, copies of documents demonstrating amounts paid to landowners, acquisition tract files and property appraisals. The Woods also seek similar documents for specifically identified gathering systems and lines, as negotiated between WFS and six named property owners. [Ex. A to WFS's Memorandum of Law.]

In support of their subpoena, the Woods argue that the requested documents are relevant, necessary and discoverable. They further assert that WFS's effort to avoid production of the requested documents is an attempt to prevent landowners from standing "on equal footing with us knowing the going market price for pipeline easements" and to keep landowners "in the dark" to "get away with below market values." [Woods' Response, 9.]

WFS argues that the requested documents are not relevant, that the time frame of 1990-present is unreasonable or overbroad, that the requested information is private and confidential, and that documents relating to settlements between WFS and landowners are protected by the work product doctrine.

## **Legal Standard**

Generally, discovery is allowed of any matter that is relevant to the claim or defense of a party, provided the requested information protected by a privilege. Fed.R.Civ.P. 26(b)(1). Information need not be admissible at trial in order to be considered "relevant" under Rule 26. The requested discovery, however, must appear "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Rule 45 governs the issuance of a subpoena. A court "shall quash or modify the subpoena if it . . . subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv). If a subpoena requires disclosure of a trade secret or other confidential or commercial information, the court may quash or modify the subpoena. Fed.R.Civ.P. 45(c)(3)(B)(i),(iii). A court may modify or quash a subpoena if the subpoena is unreasonable or oppressive. Williams v. City of Dallas, 178 F.R.D. 103, 109 n.4 (N.D. Tex. 1998); Fed.R.Civ.P. 45(c)(3)(A)(iv).

With respect to the discovery matter at hand, the question is what information is relevant for purposes of determining the market value of the Woods' property. To ascertain fair market value of a property being condemned, the trier of fact must determine what a willing buyer would pay to a willing seller at the time of the taking. United States v. 25.02 Acres, 495 F.2d 1398, 1400 (10th Cir. 1974) (internal citations omitted).

> The major factors to be considered in determining the market value of real estate in condemnation proceedings are: (a) a view of the premises and their surroundings; (b) a description of the physical characteristics of the property and its situation in relation to points of importance in the neighborhood; (c) the price at which the land was bought, if sufficiently recent to throw light on present value; (d) the price at which similar neighboring land has sold at about the time of the taking; (e) the opinion of competent experts; (f) a consideration of the uses for which the land is adapted and for which it is available; (g) the cost of the improvements if they are such as to increase the value of the land; and (h) the net income from the land, if the property is devoted to one of the uses to which it could be most advantageously and profitably applied.

Id. (internal citation omitted). "The best evidence is found in sales of comparable property within a reasonable time before the taking." Id.

The parties seem to agree that there is a general rule of non-admissibility in condemnation actions with respect to evidence of prices paid by the condemning party to a private landowner for

4

lands to be used in projects where the lands are being condemned, or where there is a threat of condemnation. A sale made after threat of condemnation is sometimes known as a "forced sale." "Forced sales usually involve transactions where there is an element of compulsion either on the part of the seller who is obliged to act with undue haste, thereby affording him an inadequate period in which to effect a reasonable deal, or on the part of the purchaser, who for purely personal reasons or necessities is compelled to pay a higher price than an ordinary purchaser would be wiling to pay." 4 J. Sackman, Nichols on Eminent Domain, § 12B.07 (2002).

This general rule that evidence of comparable sales from "forced sales" is not admissible at trial appears to be the law of this circuit. United States v. 46,672.96 Acres, et al., 521 F.2d 13, 17 (10th Cir. 1975).[2] The rationale is that payments made to condemner are in the nature of a "compromise" and are not "evidentiary on what constitutes fair market value." Id. at 17. The Fifth Circuit further elaborated that the rule is based on the view that payments to condemner represent attempts to avoid the expense and uncertainty of litigation and are not fair indications of market value. Transwestern Pipeline Company v. O'Brien, 418 F.2d 15, 17-18 (5th Cir. 1969).

> A company condemning land might be willing to pay more than it is worth, and the owner of land might be willing to take less than it is worth in order to avoid a lawsuit. Since a landowner would prefer to reach an agreement rather than be subjected to a lawsuit by a condemnor, a sale to a company possessing the power of eminent domain is more likely to show a compromise value than the true market value of the land.

Id. at 18 (internal citations omitted). Thus, based on the general rule, if the requested documents here relate to sales of properties that are being condemned or where there is a threat of condemnation,

---

[2]The Tenth Circuit has carefully noted, however, that there are decisions holding that a general exclusionary rule of such evidence should not be applied prior to trial. United States v. 25.02 Acres, 495 F.2d at 1401.

then such document requests are not reasonably calculated to lead to the discovery of *admissible* evidence and therefore, would not be discoverable.

However, both parties also recognize that there is an exception to the general rule of non-admissibility. Where the sales of properties are voluntary or made without mention or threat of condemnation, the evidence of those sales made may be admissible at trial. United States v. 46,672.96 Acres, 521 F.2d at 17 (citing Transwestern Pipeline, 418 F.2d at 18-19). The Fifth Circuit found that the exception was sensible "if given its properly narrow interpretation." Transwestern Pipeline, 418 F.2d at 19.

> The party claiming the exception [at trial] bears the burden of proving that the comparable sales are voluntary; that is, he must show that the sales in question were made willingly, without coercion, compulsion or compromise. Sales to buyers possessing the power of eminent domain should be admitted as independent evidence of market value only when it is certain that those sales truly represent the market value of the land in question. That necessarily means that the party relying on the exception to the exclusion rule must show that the sales were uninfluenced by the buyer's possession of the eminent domain power. the burden is a heavy one.

Id.

Here, WFS argued in their opening brief that the requested documents all relate to "forced sales" or sales that occurred under a threat of condemnation proceedings. Because the requested information would not be admissible under the general rule, WFS contends that it is not reasonably calculated to lead to admissible evidence. The Woods responded that the sales, as evidenced by deposition testimony of a previous WFS employee, were the result of mutual agreement and/or made between "willing" buyers and sellers. They involved no condemnation proceedings or any threat of condemnation. WFS filed affidavit testimony attached to its reply in which a current employee of The

Williams Companies, Inc. testified that the purchases of the right-of-way easements avoided condemnation lawsuits.  He further stated that "where negotiations concerning payment amounts became protracted, the costs and expenses associated with a potential condemnation action was a factor in WFS's determination of the amount it was willing to offer to purchase the right of way easements." [Ex. A. to Reply.]  Thus, the evidence is in conflict on the key question of whether the prior easement sales to WFS were voluntary or forced sales.

## Analysis

### A.	Motion to Quash

The most analogous case to the matter at hand arose from the Sixth Circuit.  In United States v. 691.81 Acres, 443 F.2d 461 (6th Cir. 1971), the appellate court reversed and remanded for a new trial based on its finding that the trial court erred in granting the Government's motion to quash a subpoena duces tecum.  In United States v. 691.81 Acres, the defendant requested purchase documents related to a tract of land taken without a condemnation action.  The government argued that the land was purchased under threat of condemnation, and the trial court agreed with the government, thereby quashing the discovery request.  In reversing the trial court, the Sixth Circuit reasoned that the allegations of the government went only to the question of ultimate admissibility of the evidence at trial.  Id. at 462.  Such a ruling was premature as the defendant/appellant was not permitted to demonstrate the circumstances that may have rendered the comparable sale evidence competent and admissible.  Id.  While the Sixth Circuit recognized that the best evidence of comparable sales was of those transactions made without knowledge of a contemplated condemnation, it noted that such evidence was "seldom available."  Id. at 463.

Our own circuit has not decided this precise issue but in United States v. 25.02 Acres affirmed the trial court's denial of discovery of appraisal reports. 495 F.2d at 1403. This Court distinguishes the result reached by the Tenth Circuit in United States v. 25.02 Acres and agrees with the reasoning of the Sixth Circuit in United States v. 691.81 Acres. Thus, The Court will permit the Woods some of the requested discovery, subject to the modifications set out below.

In United States v. 25.02 Acres, part of the Tenth Circuit's reasoning for upholding the denial of discovery appeared to stem from the fact that the requested information concerned properties that had only been appraised and had not actually been bought or sold. "[A] mere offer to buy or sell property is not a measure of the market value of a similar property . . . ." Id. Here, it is undisputed that WFS actually acquired the easements through purchase.

In addition, due to the conflicting evidence on this issue, it is unclear whether the requested information concerns "forced sales" based on the fact WFS's power to condemn. WFS argues that "[t]ransactions where there is a sale to a party with the power to condemn are by definition forced sales." [Reply, 4.] WFS's support for this position apparently is derived from portions of the Law of Eminent Domain, which it attaches to its opening brief. However, that treatise does not support the argument and indeed, states the opposite. "[T]he mere fact that the buyer that purchased land by voluntary sale was invested with the power of eminent domain does not, in and of itself, show that the sale was a compulsory settlement rather than a fair transaction in the market." Law of Eminent Domain, 12B.07[2].

Moreover, the affidavit testimony provided by WFS does not provide convincing testimony, at this stage of the proceedings, whether the sales at issue were actually made under threat of condemnation proceedings. The affiant's statements were so carefully phrased that they appear

8

equivocal. Whether condemnation proceedings were "a factor" in WFS's evaluation of sales price does not necessarily mean the buyer accepted a price because of threat of condemnation. *See id.*

The Court concludes that some but not all of the requested information is discoverable. The Court, however, makes no ruling at this time on whether the requested information will be admissible at trial, should this case proceed to trial. That decision remains with the trial judge.

### B.     Modification of Subpoena and Protective Order

The Court finds that some of the requested sales information is reasonably calculated to lead to admissible evidence, and is, therefore, relevant under Rule 26. However, the Woods' request for information for over ten years of sales documents, including field notes, correspondence, etc. is unreasonable. This is particularly true in view of the Woods' reliance on the deposition testimony of former WFS employee Paul Lehrman. Mr. Lehrman testified that he thought a reasonable or fair indicator of property value would include "the last year or two." [Ex A. to Response, 28-29.] The Tenth Circuit found that the "best evidence" of fair market value is found in sales of comparable property "within a reasonable time before the taking." United States v. 25.02 Acres, 495 F.2d at 1400. The Court also noted that one of the factors to consider in determining fair market value was the price at which the land was bought, "if sufficiently recent to throw light on present value." Id.

Accordingly, the Court limits the requested information to the time period which Mr. Lehrman believed was a reasonable or fair indicator, that is, the last two years prior to the time Questar brought this condemnation proceeding against the Woods. In addition, the Court further modifies the subpoena by requiring production of only those documents that show final purchase and sales

9

prices for the comparable properties.[3]  The Court will order these documents produced to the Woods within ten days of receipt of this Order.  The Woods, however, must treat the information produced as "confidential" and utilize it for purposes of this litigation and for no other purpose.  The information may not be disclosed to others save for the parties' experts who must agree not to disclose this information outside of this lawsuit.  At the completion of this litigation, the "confidential" documents are to be returned to WFS's counsel without either party's attorneys retaining copies.

The Court is unable to determine at this stage of the proceedings whether the documents to be produced are cumulative or whether the Woods have other avenues to obtain the same information.  The Court will not address these matters based on the present record.  Furthermore, the Court rejects WFS's argument that the above-described documents are subject to protection because of their "private" or "confidential" nature and/or because they are "work product."  The Court's directions to counsel that the documents be treated as confidential should resolve any such concerns.

Finally, the Court rejects the Woods' arguments that they are entitled to an award of expenses and sanctions against WFS.  Based on the pleadings and attachments, the Court sees no basis to grant the Woods' request.

## Conclusion

Based on the above-stated reasons, the Court will grant, in part, WFS's Motion to Quash and for Protective Order [doc. 83] and deny it in part.

---

[3]WFS's briefing did not appear to argue that the properties at issue were not comparable to the Woods' property.

IT IS THEREFORE ORDERED that the Woods' subpoena is hereby modified only requiring that:

(1) Within ten (10) days of receipt of this Order, WFS shall produce or make available to the Woods those documents that show final purchase and sales prices for comparable properties to that of the Woods, as described in the Subpoena, for a period of two (2 years) prior to the date Questar initiated this condemnation proceeding against the Woods;

(2) the documents that are produced to the Woods shall be treated as "confidential documents" to be used for purposes of this litigation only and shall be returned to counsel for WFS at the completion of this litigation; and

(3) the Woods' request for costs and sanctions is denied.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge