IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

QUESTAR SOUTHERN TRAILS PIPELINE COMPANY, a Utah company,

        Plaintiff,

v.                                                                              No. CIV 02-10 BB/LFG

3.47 ACRES OF LAND, COUNTY OF SAN JUAN, STATE OF NEW MEXICO, AUBREY D. and PATRICIA A. WOOD,

        Defendants.

### MEMORANDUM OPINION
### EXCLUDING PIPELINE CORRIDOR THEORY

        PRIOR to the trial, Plaintiff filed a motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to prevent Defendants' experts from raising the "pipeline corridor" theory.  "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Id*. at 595.  The purpose of the *Daubert* analysis, therefore, "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Thus, the litmus test is what experts actually do in the real world outside the courtroom.  *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995); *Karlin v. Foust*, 975 F. Supp. 1177, 1215 (W.D. Wis. 1997); *see also* 2 STEPHEN A. SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL 1239 (7th ed. 1998) ("If the methodology is good enough for the real world, it is good enough for a trial.  On the other hand, if the methodology is altered for purposes of litigation, there is every reason to exclude it after *Daubert*."). The Court concludes that no one in the real world uses the "pipeline corridor" theory to value ranch or residential land.

In an earlier ruling, the Court noted the possibility that a pipeline corridor could have additional value if someone not affiliated with the condemnor did the leg work of obtaining easements from multiple landowners and presented this as a ready-made corridor. It is also possible an easement could become so overburdened with pipelines or power lines it could have no other use and therefore result in an effective taking of the fee rather than the easement.  Defendants presented no evidence of either situation. Rather, the Woods' land would continue to be used as agricultural land except that the condemnor should be charged by the rod and at a premium because other pipelines existed nearby.  This demonstrates it was a preferable route to the processing plant and therefore the "theory" would result in a highest and best use as a pipeline corridor and a substantial multiplication of value.  This is not a proper basis for valuation.  *United States v. 77,819.10 Acres of Land*, 647 F.2d 104, 110 (10th Cir. 1981).

**This application of the "theory" is completely theoretical and totally created for forensic purposes. Both of Defendants' expert appraisers originally evaluated the land at issue as ranch land (its present use) and residential property (a reasonably foreseeable future use). It was only after consultation with legal counsel and "further research" that they became aware of the pipeline corridor theory and neither expert had ever been involved with or even had knowledge of any real world sales in San Juan County where a willing buyer and a willing seller adopted this valuation method. Expert testimony deriving from techniques created for, and rooted exclusively in, the courtroom are suspect and must be examined very carefully under the judicial microscope.** *Huey v. United Parcel Serv.*, **165 F.3d 1084, 1087 (7th Cir. 1999);** *Moore v. Ashland Chem., Inc.*, **126 F.3d 679, 687 (5th Cir. 1997);** *Black v. Rhone-Poulenc, Inc.*, **19 F. Supp. 2d 592, 603-4 (S.D.W. Va. 1998).**

**Application of the pipeline corridor theory to the facts of this case would also defy common sense. All Mr. Wood could offer as added value for the "pipeline corridor" across his property was that after condemnation he wanted to sell it as a pipeline corridor (but also continue to use it as pasture). It was his expressed intent to continue to graze cattle on this land just as he had done both before and after El Paso installed the original pipeline across this "corridor." Nonetheless, it is Defendants' theory that the corridor should become more valuable to each succeeding user. Not only is this application of the pipeline corridor theory contrary to logic, it also stands the whole**

**concept of damages on its head.  As the pipeline corridor becomes more established by each use, its value should increase so the land is actually enhanced, all the while the cattle continue to graze contentedly over the corridor.  While at least one law student has advanced this theory,[1] it has been rejected by the courts addressing it directly.[2]**

**Application of the pipeline corridor theory here would also be contrary to both established New Mexico and federal law.  *United States v. 77,819.10 Acres of Land*, 647 F.2d at 110; *United States v. 8.41 Acres of Land*, 680 F.2d 388 (5th Cir. 1982); *Yates Petroleum Corp. v. Kennedy*, 775 P.2d 1281 (N.M. 1989); *Board of Trustees of Town of Farmington v. B.J. Serv., Inc.*, 406 P.2d 171 (N.M. 1965).**

**Based on the above legal analysis and after hearing the experts' testimony, both before and during[3] trial, the Court concluded that whatever validity the pipeline corridor theory may have, it has no legitimate application to the facts of this case and would serve only to confuse the issues, mislead the jury, and waste time.  Fed. R. Evid. 403.  *United States v. Schmidt*, 711 F.2d 595, 598-99 (5th Cir. 1983).  Therefore, in order**

---

[1] Laura A. Haney, Comment: *Judicial Battles Between Pipeline Companies and Landowners:  It's Not Necessarily Who Wins But By How Much*, 37 Hou. L. Rev. 125, 161-5 (2000).  The unpublished Texas cases which Ms. Haney relied on have now been overruled by *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002).

[2] *Exxon Pipeline Co. v. Zwahr, supra*; *Exxon Pipeline Co. v. Hill*, 788 So. 2d 1154 (La. 2001).

[3] All testimony was taken out of the presence of the jury.

to eliminate unjustifiable expense and delay, and to further the ascertainment of truth,[4] the Court precluded Defendants' experts from testifying on this theory.  Fed. R. Evid. 102.  *United States v. Call*, 129 F.3d 1402 (10th Cir. 1997) (jury might overvalue scientific sounding expert testimony which was not offered for legitimate purpose).

Dated at Albuquerque this 25th day of June, 2003.

_____
BRUCE D. BLACK
United States District Judge

**Counsel for Plaintiff:**
   Jon J. Indall, COMEAU MALDEGEN TEMPLEMAN & INDALL, Santa Fe, NM
   James C. Brockmann, STEIN & BROCKMANN, Santa Fe, NM
   Colleen Larkin Bell, QUESTAR REGULATED SERVICES COMPANY, Salt Lake City, UT

**Counsel for Defendants:**
   J.E. Gallegos, Patricia Adele Matthews, Santa Fe, NM
   Karen L. Townsend, Aztec, NM

---

[4] The Court did not preclude Defendants' experts from testifying on the highest and best use of the land for agricultural or residential purposes or on sales of comparable land for such purposes.  Defendants, however, apparently chose not to call their experts Ms. Riley and Mr. Hunsperger to testify on these appraisals.