IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

QUESTAR SOUTHERN TRAILS PIPELINE COMPANY, a Utah company,

      Plaintiff,

v.                                                              No. CIV 02-10 BB/LFG

3.47 ACRES OF LAND, COUNTY OF SAN JUAN, STATE OF NEW MEXICO, AUBREY D. and PATRICIA A. WOOD,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO RECONSIDER *DAUBERT* RULING,
TO AMEND FINDINGS AND FOR NEW TRIAL**

**THIS MATTER** is before the Court on *Defendants' Motion to Reconsider Daubert Ruling, to Amend Findings and for a New Trial* (doc. #235). The Court having duly considered the briefs of the parties, finds the motion must be Denied.

*Discussion*

I.   *Reconsideration of Daubert Ruling*

A motion for reconsideration should not be used as a vehicle to relitigate matters already argued and disposed of. *Shields v. Shetler*, 120 F.R.D. 123 (D. Colo. 1988); *United States v. Western Elec. Co.*, 690 F. Supp. 22 (D.D.C. 1988). Rather, the relief

sought by Defendants is extraordinary in nature and may be granted only in exceptional circumstances. *Servants of Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000). No exceptional circumstances have been raised by Defendants.

Initially, it must be noted Defendants' motion is based on an incorrect factual premise, to-wit: "Our research has failed to find an appellate decision <u>upholding disqualification by a district court</u> of a qualified expert appraiser in an eminent domain case on the basis of the *Daubert* test or a *Daubert*-like exclusion." Defs.' Memo. Supp. at 2 (emphasis in original). This Court did not "disqualify" either of Defendants appraisers. Rather, the Court precluded them from testifying to a theory which lacked any foundation in present fact, law or logic. It is not applied by real experts to similar facts in the real world and would therefore likely confuse and mislead the jury. *See United States v. 8.41 Acres of Land*, 680 F.2d 388 (5th Cir. 1982). *See also United States v. Tran Trong Cuong*, 18 F.3d 1132, 1142 (4th Cir. 1994); Fed. R. Evid. 403.

Defendants representation regarding the lack of "an appellate decision upholding disqualification by a district court of a qualified appraiser" is also an inaccurate statement of the law. State appellate courts have upheld trial courts in condemnation cases when they refused to allow appraisers to testify to Defendants' pipeline easement theory over *Daubert* objections and indeed reversed the admission of such evidence. *See, e.g., Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002); *Westtex 66 Pipeline Co. v. Baltzell*, 2003 WL 21665312 (Tex. Civ. App. 2003); *Exxon Pipeline Co. v. Hill*, 788 So.

2

2d 1154 (La. 2001). Although Defendants now eschew the nomenclature "pipeline corridor," likely because of the *Hill* and *Zwahr* cases, the exact testimony tendered by Defendants herein was rejected in these decisions as well as *Westtex*.

In *Zwahr*, Exxon condemned a 50-foot easement to build a pipeline across the Zwahrs' 49-acre cotton farm. As in the present case, another pipeline already crossed the farm parallel to much of the proposed route. However, neither pipeline effected the Zwahrs' continued use of the surface for cotton farming. As in the present case, the Zwahrs' expert appraiser, Mr. Kangieser, valued the easement with "a value independent from that of the surface acreage, with a highest and best use as a pipeline easement." 88 S.W.3d at 626. Exxon's appraisers valued the land for farm and rural residential purposes at an amount approximately 5% of the value attested to by Kangieser using the pipeline easement theory. Holding the district court had erred in admitting the expert testimony based on pipeline easement value, the Texas Supreme Court recited Rule of Evidence 702 and quoted *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court concluded the testimony of Zwahrs' expert violated the before and after rule by valuing the easement separately for a pipeline:

> In reaching his highest-and-best-use conclusion, he relied, in part, on the existence of the Koch pipeline, which he believed created a probability that another pipeline would come in on or adjacent to that pipeline. He then researched the market for prices at which pipeline easements have sold, and based on those sales, estimated the value of the 1.01-acre tract as $36,077.

> Kangieser's testimony as a whole reveals that he premised his valuation on the fact of Exxon's condemnation, thus improperly including project enhancement in that valuation.

88 S.W.3d at 629.

As in the case at bar, the landowners also employed an expert to testify on the "per rod" value of a pipeline easement in *Exxon Pipeline Co. v. Hill*. In the consolidated appeal, one district court had admitted such testimony, one had excluded it under *Daubert*. Exxon's appraiser testified the highest and best uses were agricultural, residential or light industrial. Once again, based on other existing pipeline easements, plaintiffs' experts offered highly inflated values of the easements as a pipeline corridor. The Louisiana Supreme Court pointed out the fallacy of permitting appraisers to base their valuations strictly on pipeline easement values.

> The per rod comparables appear to show the value of the property as impacted by the expropriation itself, which is in stark contrast to existing expropriation law. Rods standing alone fail to consider many important attributes which insure proper valuation of land. As stated above, a landowner may be compensated $100 per rod for his property because his servitude was the last remaining parcel needed by a company. By contrast, the same landowner may only be paid $15 per rod because his is the first parcel purchased. Attempting to derive a system to value pipeline servitude by rods would lead to higher and unfair valuation of property.

788 S. 2d at 1164.

Although they initially appraised the land following the well recognized before-and-after technique, at trial Defendants' experts, Wayne Hunsperger and Laura Riley, advanced a per rod value more than twenty times higher than the value of Defendants'

**property as agreed upon by all of the appraisers using standard appraisal techniques. An appraisal advanced solely to artificially inflate the market value of property may properly be excluded.** *See, e.g., Union Pacific R. Co. v. 174 Acres of Land*, **193 F.3d 944, 947-48 (8th Cir. 1999) (proper for trial court to exclude evidence of what a developer would pay for individual parcels of land if its highest and best use was residential, when land was being used as a farm at the time of the taking and no residential prospect).**

**Defendants also continue to argue New Mexico law supports the revised Hunsperger and Riley methodology. Contrary to Defendants' assertion, however, New Mexico law, like federal law, requires the determination of the "fair market value of the property, as a whole, before and after the taking."** *Board of Trustees v. B.J. Serv., Inc.*, **406 P.2d 171, 173 (N.M. 1965);** *Yates Petroleum Corp. v. Kennedy*, **775 P.2d 1281 (N.M. 1989);** *United States v. 77,819.10 Acres of Land*, **647 F.2d 104 (10th Cir. 1981).**

**Finally, a motion for reconsideration must present matter that is likely to alter the outcome of the jury verdict.** *Aldrich Enter., Inc. v. United States*, **938 F.2d 1134 (10th Cir. 1991). After counsel chose not to call Defendants' expert appraisers, Mr. Wood himself testified that based on the use of the land for prior easements it was worth $105,000. Rather than being persuaded by this pipeline easement testimony, the jury discounted Mr. Wood's testimony and awarded only $33,492.**

5

**II.     *New Trial***

Federal Rule of Civil Procedure 59(a) provides for new trials when: 1) the fact finder's verdict is against the weight of the evidence; 2) the verdict is excessive or inadequate; 3) there is newly discovered evidence; 4) there is improper conduct by counsel or the court; or 5) there is improper conduct affecting the jury. *See Pool v. Leone*, 374 F.2d 961 (10th Cir. 1967); *Ahern v. Scholz*, 85 F.3d 774 (1st Cir. 1996). Defendants do not argue that any of these grounds apply. Rather, they base their argument on the Court's refusal to allow Mr. Hunsperger and Ms. Riley to testify on a per rod value of the land as a pipeline easement. Exclusion of expert testimony which would not have assisted the jury in their search for truth does not warrant a new trial. *Holt v. Utility Trailers Mfg. Co.*, 494 F. Supp. 510 (E.D. Tenn. 1980).

**III.    *Conclusion***

Defendants have failed to show that there are any exceptional circumstances that would require reconsideration of the Court's *Daubert* ruling precluding valuation solely on a pipeline corridor methodology for appraising easements on the present facts. The Court's findings are not "clearly erroneous," but, rather, supported by the record. Indeed, this is precisely the type of circumstances in which *Daubert* should shut the gate on novel, unorthodox theories which are created solely for purposes of litigation. Defendants are thus, yet again, simply attempting to relitigate matters that have already been decided.

**Now, therefore,**

**IT IS ORDERED** that *Defendants' Motion to Reconsider Daubert Ruling, to Amend Findings and for a New Trial* is **DENIED.**

**DATED** at Albuquerque this 31st day of July, 2003.

*[signature: Bruce D. Black]*

**BRUCE D. BLACK**
**United States District Judge**


**Counsel for Plaintiff:**
    Jon J. Indall, COMEAU MALDEGEN TEMPLEMAN & INDALL, Santa Fe, NM
    James C. Brockmann, STEIN & BROCKMANN, Santa Fe, NM
    Colleen Larkin Bell, QUESTAR REGULATED SERVICES COMPANY, Salt Lake City, UT

**Counsel for Defendants:**
    J.E. Gallegos, Patricia Adele Matthews, Santa Fe, NM
    Karen L. Townsend, Aztec, NM